UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESSIE SMOOT,

                Plaintiff,         Civil Action No. 15-13081
                                                Honorable Terrence G. Berg
                                                Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 9]

Plaintiff Essie Smoot ("Smoot") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 9], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Smoot is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Smoot's Motion for Summary Judgment [8] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On July 2, 2012, Smoot filed an application for DIB, alleging a disability onset date of February 15, 2010.[1] (Tr. 109-15). This application was denied initially on October 24, 2012. (Tr. 60-64). Smoot filed a timely request for an administrative hearing, which was held on May 21, 2014, before ALJ John Rabaut. (Tr. 27-52). Smoot, who was represented by non-attorney representative Yvonne Johnson Taylor, testified at the hearing, as did vocational expert Don Harrison. (*Id.*). On June 23, 2014, the ALJ issued a written decision finding that Smoot is not disabled under the Act. (Tr. 14-23). On June 25, 2015, the Appeals Council denied review. (Tr. 1-4). Smoot timely filed for judicial review of the final decision on August 31, 2015. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

---

[1] Smoot has previously filed several unsuccessful applications for disability benefits; her most recent one was denied at the initial level on August 1, 2011. (Tr. 14). Smoot did not appeal the August 2011 determination and, thus, that decision is final and binding on all parties. (*Id.*). The ALJ also concluded that there was no basis for re-opening the related application (*Id.*), and Smoot has not challenged that decision.

>mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

   *1.     Smoot's Reports and Testimony*

At the time of the administrative hearing, Smoot was 37 years old. (Tr. 31). She lived in a house with two of her three children. (Tr. 41-42, 155). She graduated from high school and took a few college classes. (Tr. 31). Previously, she worked as a housekeeper. (Tr. 33, 150).

Smoot alleges disability as a result of bilateral hearing loss. (Tr. 149). She testified that she began noticing hearing loss in 2009 and eventually stopped working in February 2010 not because she could not work due to her condition, but because she was embarrassed that she could not hear what was being said to her. (Tr. 33, 35, 149). Her hearing loss is worse in her right ear than her left; she also has a "buzzing sound" in her ears and experiences pain from time to time.

3

(Tr. 33-34). Since February 2011, she has worn a hearing aid in her right ear. (Tr. 161). She compensates for her hearing loss by sitting close to the person speaking, looking right at him or her, and reading lips. (Tr. 35-36, 39).

Smoot is able to cook, clean, do laundry, care for her children, and attend to her own personal needs. (Tr. 156). Sometimes, she needs her children to repeat what was said on television. (Tr. 157). She goes outside every day and is able to use public transportation, shop in stores, pay bills, and handle a checking and savings account. (Tr. 158). She does not drive because she is afraid she will not hear emergency vehicles. (Tr. 42, 158). She testified that she could perform a repetitive job "putting things together" (and which did not require her to regularly receive oral instructions), but she would not want to work in such a job because it would not be challenging. (Tr. 40).

### 2. *Medical Evidence*

The Court has thoroughly reviewed Smoot's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Don Harrison testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 45-46, 47-52). The ALJ asked the VE to imagine a hypothetical individual of Smoot's age, education, and work experience who can perform work at all exertional levels with the following nonexertional limitations: must avoid all exposure to fast moving machinery; limited to occupations that do not require fine hearing capabilities, complex verbal communication, telephone communication, and no very loud work; and only occasional interaction with the general public. (Tr. 48-49). The VE testified that the hypothetical individual

4

would be capable of performing Smoot's past relevant work. (Tr. 49). The VE further testified that the hypothetical individual also would be capable of working in the jobs of small products assembler (1,500 jobs in southeast Michigan), light fixture inspector (2,000 jobs), and hand packer (1,500 jobs). (Tr. 49-50).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Smoot engaged in substantial gainful activity during the following relevant periods: February 2010 to September 2010, October 2011 to December 2011, and July 2012 to December 2012. (Tr. 16). Nevertheless, the ALJ proceeded to Steps Two through Five of the sequential evaluation process with respect to the entire period under adjudication. (Tr. 17). At Step Two, the ALJ found that Smoot has the severe impairment of moderate bilateral sensorineural hearing loss. (*Id.*). At Step Three, the ALJ found that Smoot's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17-18).

The ALJ then found that Smoot retains the residual functional capacity ("RFC") to perform work at all exertional levels with the following nonexertional limitations: must avoid all exposure to fast moving machinery; limited to occupations that do not require fine hearing capabilities, complex verbal communication, telephone communication, and no very loud work; and only occasional interaction with the general public. (Tr. 18).

At Step Four, the ALJ determined that Smoot is able to perform her past relevant work as a housekeeper. (Tr. 20-21). In the alternative, at Step Five, the ALJ concluded, based in part on the VE's testimony, that Smoot is capable of performing a significant number of jobs that exist in the national economy. (Tr. 21-22). As a result, the ALJ concluded that Smoot is not disabled under the Act. (Tr. 22).

E.     **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.   Analysis**

In her motion for summary judgment, Smoot argues that the ALJ erred in determining that her impairment does not meet Listing 2.10 ("Hearing loss not treated with cochlear implantation"). (Doc. #8 at 9-10). In order to meet the requirements of this Listing, Smoot, who the ALJ acknowledges suffers from the severe impairment of moderate bilateral sensorineural hearing loss (Tr. 17), must demonstrate:

> A.   An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c).
>
> OR
>
> B.   A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 2.00B2e).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 2.10. In concluding that Smoot's hearing impairment does not meet the requirements of this Listing, the ALJ said:

> While audiogram testing results do show the claimant has bilateral sensorineural hearing loss, the claimant's average air conduction hearing threshold, average bone conduction hearing threshold, and word recognition scores do not rise to the level required by the listing. For example, the claimant's word recognition score in the better (left) ear is 80% and the listing requires a score of 40% or less in the better ear.

(Tr. 18 (internal citations omitted)).

Courts have recognized that, when considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). Even if the ALJ fails to sufficiently articulate his Step Three Findings, however, the Court will not overturn his decision if that error was harmless. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 (E.D. Mich. 2012). Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled…." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original).

As set forth above, Smoot can meet the criteria of Listing 2.10 with evidence of (1) an average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (Listing 2.10A); or (2) a word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (Listing 2.10B). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 2.10. A review of the scant medical evidence in the record demonstrates that Smoot has not met her burden under either portion of the Listing. *See Wilson*

*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (burden on claimant to establish that her impairment meets or medically equals a Listing).

The record contains the results of four audiograms – administered in July 2010, August 2010, April 2011, and September 2012. (Tr. 176, 180, 182, 188). Three of these audiograms, those conducted in July 2010, August 2010, and September 2012 (Tr. 176, 180, 188), do nothing to satisfy Smoot's burden because they occurred during a period of time when Smoot was determined to have engaged in substantial gainful activity ("SGA"): between February 2010 and September 2010, between October 2011 and December 2011, and between July 2012 and December 2012. (Tr. 16). If an ALJ finds that a claimant is performing SGA, the claimant is not disabled, without any further consideration of the medical evidence. *See* 20 C.F.R. §404.1520(4)(i). Smoot does not challenge the ALJ's Step One finding – and, indeed, concedes that "the wages record shows substantial gainful employment until January 1, 2013, which should be the correct onset date." (Doc. #8 at 4). Thus, the audiograms from July 2010, August 2010, and September 2012 do not establish that Smoot was disabled.

Moreover, because Smoot now indicates that the "correct [alleged] onset date" is January 1, 2013, her April 2011 audiogram (performed during a time Smoot was not engaged in SGA) is of little relevance, as it dates back almost two years before the alleged onset of disability. However, even if the Court were to consider this audiogram, those results do not establish the requisite average air conduction hearing threshold, average bone conduction hearing threshold, or word recognition score (Tr. 182). Specifically, Smoot's air conduction scores in her left (better) ear were less than 70; her bone conduction scores in her left ear were less than 30; and her word recognition score was 76% in her right ear and 80% in her left ear. (*Id.*). All of these scores fail to satisfy Listing 2.10's requirements. *Supra* at 7. Thus, Smoot's argument that the

9

ALJ erred in his Step Three analysis is without merit.

Smoot also makes several other arguments, albeit in skeletal fashion. For example, Smoot notes that the ALJ "states several times in his opinion that [Smoot] would benefit from hearing aids." (Doc. #8 at 10). According to Smoot, the relevant Listing does not allow the ALJ "to make a leap that if someone has a device to assist them that they are no longer disabled." (*Id.*). The ALJ, however, did not conclude that Smoot does not meet Listing 2.10 simply because she would benefit from hearing aids. (Tr. 17-18). Rather, the ALJ merely noted, in his summary of the medical evidence, that Smoot's treating physicians, as well as the consultative examiner, stated that she would benefit from hearing aids. (Tr. 19). Specifically, the ALJ noted Dr. Sellner's August 2010 recommendation that Smoot use hearing aids, as she will "notice a big improvement"; her new ENT's April 2011 finding that she was a good candidate for hearing aid evaluation; and Dr. Lopatin's 2012 recommendation that she use bilateral hearing aids, as they would be "very beneficial to her." (Tr. 19, 179, 181, 184). In other words, the ALJ merely noted that, although Smoot had a record of bilateral sensorineural hearing loss, all of the doctors of record noted that she would respond well to hearing aids. (Tr. 20). This was not error.

Smoot next asserts that hearing "is very important to the work environment" and that she would not be able to hear if she was in the workplace. (Doc. #8 at 11). As the Commissioner correctly notes, however, the ALJ appropriately addressed Smoot's communication limitations in his decision. The ALJ found that Smoot has no significant communication difficulties, as she had no difficulty communicating at the consultative examination and was able to speak clearly and articulate well at the administrative hearing. (Tr. 20).[2] The ALJ further concluded that

---

[2] Although the hearing transcript revealed a few instances where Smoot appeared not to have perfectly heard and/or understood the ALJ's question, overall Smoot was able to communicate well with the ALJ.

Smoot has no significant limitations in social functioning or activities of daily living as a result of her hearing loss, as she is able to handle her personal needs independently, prepare meals, shop, engage in housework, watch television, listen to music, and spend time with others. (Tr. 20, 156-59). The ALJ also noted that although Smoot testified that she stopped working because she was embarrassed that she could not hear, the record shows that she was able to work at SGA levels for several years after her hearing loss was first diagnosed in 2010. (Tr. 20 (citing Tr. 133, 172-76)). Finally, Smoot's concern about being unable to function "in a work setting that required her to be able to hear instructions" (Doc. #8 at 11) is inapposite as the ALJ imposed an RFC which, among other limitations, "limited [Smoot] to occupations that do not require fine hearing capabilities, complex verbal communication, telephone communication, and no very loud work; and only occasional interaction with the general public." (Tr. 18). Smoot failed to point to any evidence establishing greater limitations than these.

Lastly, Smoot argues that she could not perform any of the jobs identified by the VE because these positions "would have a goal pace or production requirement." (Doc. #8 at 11). Beyond this blanket assertion, however, Smoot provides no evidence demonstrating that she would have difficulty with pace or production requirements. (*Id.* at 11-12). In fact, at the hearing, Smoot testified that she could perform a repetitive job putting items together "all day long," but said such a job was not desirable to her as she would be bored. (Tr. 40).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

for Summary Judgment [9] be GRANTED, Smoot's Motion for Summary Judgment [8] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: February 12, 2016　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 12, 2016.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager